## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 25-cv-61074

GENIE-S INTERNATIONAL LTD.,
BEAUTY UNION GLOBAL LTD., AND
DONGGUAN YIXIN MAGNETIC DISK CO. LTD.

      Plaintiffs,

  v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE
A,

      Defendants.

_____/

### COMPLAINT

Plaintiffs, GENIE-S INTERNATIONAL LTD. ("GENIE-S"), BEAUTY UNION GLOBAL LTD. ("BEAUTY UNION"), and DONGGUAN YIXIN MAGNETIC DISK CO. LTD. ("DONGGUAN YIXIN"), by and through undersigned counsel, hereby sue Defendants, the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on Schedule A [1] (collectively, "Defendants"). Defendants are promoting, selling, offering for sale, and importing goods into the United States that infringe patents to which Plaintiffs have been granted licenses, within this district, through various Internet based e-commerce stores using the seller identities set forth on Schedule A (the "Seller IDs"), and alleges as follows:

### INTRODUCTION

_____

[1] Plaintiffs intend to file a Motion to Seal the Schedule A.

1.      This is an action for patent infringement to combat e-commerce store operators who trade upon Plaintiffs' reputation and goodwill by making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use, unauthorized and unlicensed products that utilize the technology of and inventions claimed in the Plaintiffs' patents, including patents covered by at least U.S. Patent Nos. 8,079,388 B2, 8,881,775 B2, 9,676,528 B2, and 10,011,402 B2 (the "BEAUTY UNION Utility Patents") and 9,738,437 B2, 8,978,938 B2, and 9,522,403 B2 (the "DONGGUAN YIXIN Utility Patents") (collectively the "GENIE-S Patents").[2]

2.      The GENIE-S Patents are valid, subsisting, and in full force and effect.  Plaintiffs are the licensees and lawful assignees of all rights, title, and interest in and to the GENIE-S Patents, which were duly and legally issued by the U.S. Patent and Trademark Office.  True and correct copies of the GENIE-S Patents are attached hereto as **Exhibit 1**.

3.      Each of the Defendants directly and/or indirectly imports, develops, designs, manufactures, distributes, markets, offers to sell, and/or sells products infringing the GENIE-S Patents (the "Infringing Products") in the United States, including in this Judicial District, and otherwise purposefully directs infringing activities to this district in connection with the Infringing Products.  Defendants conduct this activity through their numerous fully interactive commercial Internet e-commerce stores operating under the online marketplace accounts and Seller IDs (collectively, the "Defendant Internet Stores"), including but not limited to the platforms Amazon.com ("Amazon"), Shein.com ("Shein"), Temu.com ("Temu"), and Walmart.com ("Walmart").

4.      The Defendant Internet Stores are designed to appear to be selling Plaintiffs'

---

[2] BEAUTY UNION and DONGGUAN YIXIN have authorized GENIE-S to use and enforce the GENIE-S Patents, including the right to sub-license the GENIE-S Patents.

genuine GENIE-S products (the "GENIE-S Products"), while selling inferior imitations of such products that infringe one or more claims in Plaintiffs' patents.

5.      The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the Infringing Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

6.      Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal operation.  Plaintiffs are forced to file this action to combat Defendants' infringement of the GENIE-S Patents, as well as to protect unknowing consumers from purchasing Infringing Products over the Internet.

7.      As a result of Defendants' actions, Plaintiffs have been and continue to be irreparably damaged from the loss of their lawful patent rights to exclude others from making, using, selling, offering for sale, and importing their patented technology, and, therefore, seek injunctive and monetary relief.

8.      The harm and damages sustained by Plaintiffs has been directly and proximately caused by Defendants' wrongful use, advertisement, promotion, offers to sell, and sale of the Infringing Products.

9.      This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Florida and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Florida and in this Judicial District.

10.     In addition, each Defendant has offered to sell and ship Infringing Products into this Judicial District.

## SUBJECT MATTER JURISDICTION

11.     This Court has original subject matter jurisdiction over the patent infringement claim arising under the patent laws of the United States pursuant to 35 U.S.C. § 1 *et seq.*, §§ 271, 281, 282, 283, 284, 285, 28 U.S.C. § 1338(a), and 28 U.S.C. § 1331.

## PERSONAL JURISDICTION

12.     Personal jurisdiction exists over Defendants in this Judicial District pursuant to Florida Statutes §§ 48.193(1)(a)(1)–(2) and 48.193(1)(a)(6), or in the alternative, Fed. R. Civ. P. 4(k) because, upon information and belief, Defendants regularly conduct, transact, and/or solicit business in Florida and in this Judicial District, and/or derive substantial revenue from business transactions in Florida and in this Judicial District, and/or otherwise avail themselves of the privileges and protections of the laws of the State of Florida such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiffs in Florida and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in Florida and this judicial District, for example:

13.     Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the United States, including those in Florida, in this Judicial District, through accounts with online marketplace platforms, including Amazon, Shein, Temu, and Walmart (collectively, the "Marketplace Platforms"), as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("User Account(s)").  Defendants target consumers in the United States, including Florida (and more particularly, in this Judicial District),

through these marketplace platforms, in which consumers can view one or more of the Defendant Internet Stores, use to communicate with Defendants regarding their listings for Infringing Products, and use to place orders for, receive invoices for, and purchase Infringing Products for delivery in the U.S., including Florida (and more particularly, in this Judicial District).  Defendants use these platforms as a means for establishing regular business with the United States, including Florida (and more particularly, in this Judicial District).

14.     Upon information and belief, Defendants have transacted business with consumers located in the United States, including Florida (and more particularly, in this Judicial District), for the sale and shipment of Infringing Products.

15.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(b) because Defendants have committed acts of patent infringement in this Judicial District, do substantial business in the Judicial District, have registered agents in this Judicial District, and reside or may be found in this district.

## THE PLAINTIFFS

16.     Plaintiff GENIE-S is a limited company organized under the laws of Hong Kong with its principal place of business located in Hong Kong.  Plaintiff BEAUTY UNION is a limited company organized under the laws of Hong Kong with its principal place of business located in Hong Kong.  Plaintiff DONGGUAN YIXIN is a limited company organized under the laws of China with its principal place of business in Dongguan, Guandong, China.

17.     GENIE-S is a leading supplier and manufacturer of innovative GENIE-S products such as TRAVALO and Perfume Pod, which encompass proprietary technology claimed in at least a portion of the GENIE-S Patents, and has earned an international reputation for quality, reliability, and value.

## THE GENIE-S PRODUCTS

18.     GENIE-S is the official source of the GENIE-S Products in the United States.

19.     GENIE-S is a licensee of the GENIE-S Patents and has been authorized by BEAUTY UNION and DONGGUAN YIXIN to use and enforce the GENIE-S Patents (attached as Exhibit 1).

20.     The GENIE-S Products utilize the patented technology and inventions claimed in the GENIE-S Patents.

## THE DEFENDANTS

21.     Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China or other foreign jurisdictions.  Defendants conduct business throughout the United States including within Florida and in this Judicial District, through the operation of fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores and Seller IDs.  Each Defendant targets the United States, including Florida, and has offered to sell and, on information and belief, has sold and continues to sell, products that infringe the GENIE-S Patents to consumers within the United States, including Florida and in this Judicial District.

22.     Defendants are the past and present controlling forces behind the sale and offer for sale of the products that infringe GENIE-S' intellectual property rights (as described herein), using the Defendant Internet Stores.

23.     Defendants directly compete with GENIE-S by advertising, offering for sale, selling, and importing goods that infringe the GENIE-S Patents to consumers within the United States and this district through Internet based e-commerce stores using, at least, the Seller IDs and additional names or seller identification aliases not yet known to GENIE-S.   Defendants have

purposefully directed some portion of their illegal activities toward consumers in the State of Florida through advertisements, offers to sell, sales, and/or shipment of infringing goods into the State.

24.     On information and belief, Defendants have anonymously registered and maintained some of the Seller IDs for the sole purpose of engaging in illegal infringing activities.

25.     On information and belief, Defendants will continue to register or acquire new seller identification aliases for the purpose of selling and offering for sale goods that infringe the GENIE-S Patents unless preliminarily and permanently enjoined.

## THE DEFENDANTS' UNLAWFUL CONDUCT

26.     The success of the GENIE-S Products has resulted in a significant number of products that infringe the GENIE-S Patents being sold in the market.

27.     Plaintiffs have identified numerous seller identities linked to fully interactive websites and marketplace listings on platforms such as Amazon, Shein, Temu, and Walmart, which were and/or are offering for sale, selling, and importing Infringing Products to consumers in this Judicial District and throughout the United States.

28.     Defendants have persisted in creating such online marketplaces and Internet stores, like the Defendant Internet Stores.  In fact, such online marketplaces and stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by the U.S. Department of Homeland Security, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2021 was over $3.3 billion.  Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

29.     On personal knowledge and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine GENIE-S Products.

30.     Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal.  Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such infringing sites from an authorized website.

31.     Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

32.     Plaintiffs have not licensed or authorized Defendants to use the GENIE-S Patents, and none of the Defendants are authorized retailers of genuine GENIE-S Products.

33.     Upon information and belief, Defendants use unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine GENIE-S Products.  Further, Defendants utilize similar illegitimate SEO tactics to propel new seller identities to the top of search results after others are shut down.  As such, Plaintiffs also seek to disable Defendant Internet Stores owned by Defendants that are the means by which the Defendants could continue to sell Infringing Products into this District.

34.     On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores.

35.     For example, it is common practice for infringers to register their seller identities and/or User Accounts with incomplete information, randomly typed letters, or omitted cities or states.

36.     And many Defendant Internet Stores use privacy services that conceal the owners' identity and contact information.  On personal knowledge and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A, as well as other unknown fictitious names and addresses.

37.     On personal knowledge and belief, even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores.  For example, some of the Defendant Internet Stores have virtually identical layouts, even though different aliases were used to register the respective seller identities.

38.     In addition, the Infringing Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

39.     The Defendant Internet Stores also include other notable common features, including accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

40.     In addition, Defendants in this case and defendants in other similar cases against online sellers of infringing products use a variety of other common tactics to evade enforcement efforts.  For example, infringers like Defendants will often register new online marketplace

accounts under User Accounts once they receive notice of a lawsuit.

41.     Infringers also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received.  Rogue servers are notorious for ignoring take down demands sent by intellectual property owners.

42.     Infringers also typically ship products in small quantities via international mail to minimize detection by United States Customs and Border Protection.  A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

43.     Further, infringers such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiffs' enforcement efforts.

44.     On personal knowledge and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court.  Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore infringers regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

45.     Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used and continue to use the GENIE-S Patents in connection with the advertisement, distribution, offering for sale, and sale of Infringing Products into the United States and Florida over the Internet.

46.     Each Defendant Internet Store offers shipping to the United States, including Florida (in this Judicial District) and, on information and belief, each Defendant has offered to sell

products infringing the GENIE-S Patents into the United States, including Florida (in this Judicial District), which is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

47.     Defendants are promoting, offering for sale, selling and importing into the United States Infringing Products that directly infringe the GENIE-S Patents through at least the Internet e-commerce stores operating under the Defendant Internet Stores and Seller IDs.

48.     Defendants' infringing activities are done without Plaintiffs' consent or authorization.

49.     Defendants' infringing activities described herein have caused and continue to cause significant harm to Plaintiffs, including lost sales, price erosion, lost market share, and a significant negative impact on GENIE-S' goodwill.

50.     Plaintiffs have no adequate remedy at law.

51.     Plaintiffs are suffering irreparable injury and have suffered substantial damages as a result of Defendants' unauthorized and wrongful use of the technology of and inventions claimed in one or more claims of the GENIE-S Patents.   If Defendants' infringement is not preliminarily and permanently enjoined by this Court, Plaintiffs will continue to be harmed.

## FIRST CAUSE OF ACTION
## UTILITY PATENT INFRINGEMENT (35 U.S.C. § 271)

52.     Plaintiffs repeat and incorporate by reference herein the allegations contained in paragraphs 1–51 of this Complaint.

53.     Defendants are manufacturing, distributing, offering for sale, selling, and/or importing into the United States unauthorized products that directly or indirectly infringe the GENIE-S Patents both literally and under the doctrine of equivalents.

54.     For instance, examples of Defendant's infringement claims of the seven (7)

GENIE-S Utility Patents are described below:

| US Patent No. 8,978,938 B2 Claim 1 | Defendant Internet Store (DOE 39) Offering |
|---|---|
| A portable chargeable spray bottle comprising: a body having an upper part and a bottom part; a dispensing mechanism provided at the upper part; a liquid charging structure provided at the bottom part, the liquid charging structure comprising: a liquid charging mouth; a piston provided in the liquid charging mouth; and a resetting structure of the piston, wherein a liquid charging passage is arranged in the piston and is fitted with a discharging opening in fluid communication with the interior of the bottle, and wherein the piston has a groove provided with a sealing ring; an exhaust structure comprising at least one  exhaust hole allowing air to escape to outside the bottle wherein the exhaust hole is positioned to correspond with the groove of the piston, and an air duct extending to an upper portion of the bottle is in fluid communication with the exhaust hole, wherein dynamic sealing is formed by the exhaust hole and the sealing ring. |  |

| US Patent No. 9,738,437 B2<br>Claim 1 | Defendant Internet Store (DOE 5) Offering |
|---|---|
| A portable chargeable bottle comprising:<br><br>a body having an upper part and a lower part;<br><br>a dispensing mechanism provided at the upper part; and<br><br>a liquid charging structure provided at the lower part;<br><br>wherein the dispensing mechanism further comprises a nozzle assembly comprising an exhaust structure having at least one exhaust hole, a sprayer cap, and a pump with a pump core wall; and<br><br>wherein a gap between the cap and the pump core wall, which extends from the at least one exhaust hole to inside the portable chargeable bottle, allows exhaust air to escape via the gap and the exhaust hole to outside the portable chargeable bottle. | <br> |

| US Patent No. 9,522,403 B2 Claim 1 | Defendant Internet Store (DOE 7) Offering |
|---|---|
| A refillable spray dispenser comprises: <br><br> a bottle having a spray assembly and a compartment in fluid communication with the spray assembly; <br><br> the bottle further having a bottom portion comprising: <br><br> a hollow injection rod comprising a rod fill hole, a rod injection hole, and a groove along the hollow injection rod; <br><br> bottom portion walls; <br><br> a first seal and a second seal; <br><br> a bottom opening; <br><br> a portion injection hole and a portion exhaust hole provided in the bottom portion walls; and <br><br> a passage extending from the portion exhaust hole to the bottom opening, <br><br> wherein, when the hollow injection rod is at a resting position, the first seal seals the passage, preventing communication of gas from the compartment to the bottom opening, and the second seal seals the rod injection hole, preventing communication of liquid from the rod hole to the compartment, <br><br> wherein, when the hollow injection rod is in an extended position and the dispenser is being refilled, the first seal allows communication of gas from the compartment, via the portion exhaust hole and the passage to the bottom opening, and the second seal allows communication of liquid from the rod fill hole, via the rod injection hole, to the compartment, and <br><br> wherein said groove allows gas to bypass said first seal since the first seal grips the entire circumference of the hollow injection rod and cannot seal the groove in the extended position. |  |

| US Patent No. 8,881,775 B2 Claim 1 | Defendant Internet Store (DOE 37) Offering |
|---|---|
| A method of refilling a perfume dispenser with a non-compressible liquid form a perfume bottle having a spraying mechanism that comprise a stem through which the non-compressible liquid is dispensed and a removable spray button, the method comprising:<br><br>providing a perfume dispenser having an atomizer in an upper portion of the perfume dispenser for dispensing non-compressible liquid and a refill mechanism in a bottom portion of the perfume dispenser wherein said refill mechanism comprises a one-way check valve adapted to receive the stem of the perfume bottle;<br><br>removing the spray button from the spraying mechanism of the perfume bottle to expose the stem; and<br><br>pushing the stem of the perfume bottle into the check valve to allow the non-compressible liquid to flow through said check valve into the perfume dispenser. |  |

| US Patent No. 8,079,388 B2 Claim 1 | Defendant Internet Store (DOE 19) Offering |
|---|---|
| A portable refillable non compressible liquid dispenser adapted to receive non-compressible liquid from a bottle provided with a spraying means having a stem through which the non-compressible liquid is dispensed, the portable refillable non compressible liquid dispenser consisting of a body having an upper portion with a first opening and a bottom portion with a second opening, <br><br> wherein the first opening has a vaporizer mechanism for dispensing non-compressible liquid received in the refillable dispenser, said vaporizer mechanism comprising a tube positioned within the dispenser, a pump communicating with the tube, and a nozzle communicating with the pump, through which nozzle the non-compressible liquid is sprayed in an outward direction, and <br><br> wherein the second opening has a refill mechanism comprising a check valve adapted to receive the stem of the bottle so that when the stem is pushed through the check valve, the check valve is open to and receives the non-compressible liquid through the refill mechanism from the spraying means of the bottle and when the stem is withdrawn from the check valve, the check valve is closed to prevent leakage of the non-compressible liquid. |  |

| US Patent No. 9,676,528 B2<br>Claim 1 | Defendant Internet Store (DOE 73) Offering |
|---|---|
| An encased dispenser comprising a casing and a dispenser, wherein:<br><br>the casing comprises a cap and a cover;<br><br>the dispenser comprises a top part and a bottom part;<br><br>the top part comprises a dispensing mechanism; and<br><br>the casing and the bottom part are engaged to each other, and the cap and the top part are engaged to each other,<br><br>wherein engagement of the casing to the bottom part is stronger than engagement of the cap to the top part,<br><br>wherein the casing excludes threading,<br><br>wherein the dispenser further comprises a refill mechanism in the bottom part, and the cover is configured to allow refilling the encased dispenser via the refill mechanism,<br><br>wherein the cover has at least one dispenser bottom protrusion, and the bottom part has thereon a lip, and<br><br>wherein the bottom protrusion and the lip are situated relative to each other such that in order to pull apart the cover from the dispenser, the least one dispenser bottom protrusion has to be forced over the lip. | <br> |

| US Patent No. 10,011,402 B2 Claim 1 | Defendant Internet Store (DOE 12) Offering |
|---|---|
| A dispenser configured to receive one of a plurality of casings, the dispenser comprising: <br><br> a top part that comprises a dispensing mechanism; and a bottom part that comprises a refill mechanism, <br><br> wherein the casing comprises a cap and a cover to engage the top part of the dispenser, respectively, so that engagement of the cover to the bottom part of the dispenser is stronger than engagement of the cap to the top part of the dispenser, <br><br> wherein when the cover is assembled onto the dispenser, the refill mechanism is exposed through the cover to allow refilling of the dispenser via the refill mechanism, and <br><br> wherein the bottom part of the dispenser has at least one bottom protrusion, and the cover has an inside surface having thereon a lip, and wherein the at least one dispenser bottom protrusion and the lip are situated relative to each other such that to pull the cover apart from the dispenser, the lip has to be forced over the at least one dispenser bottom protrusion. |  |

55.     Defendants have infringed the GENIE-S Patents through the aforesaid acts and will continue to do so unless enjoined by this Court.  Defendants' wrongful conduct has caused Plaintiffs to suffer irreparable harm resulting from the loss of their lawful patent rights to exclude others from manufacturing, distributing, selling, offering for sale, and/or importing the patented inventions as well as the loss of sales stemming from the infringing acts.  Plaintiffs are entitled to injunctive relief pursuant to 35 U.S.C. § 283.  Unless a preliminary and permanent injunction is issued enjoining Defendants and all others acting in concert therewith from infringing the GENIE-S Patents, Plaintiffs will continue to be irreparably harmed.

56.     Defendants' infringement of the GENIE-S Patents in connection with the Infringing Products has been and continues to be willful.

57.     Based on Defendants' wrongful conduct, Plaintiffs are entitled to injunctive relief as well as monetary damages and other remedies as provided by the Patent Act, including recovering damages adequate to compensate for the infringement and any other damages as appropriate pursuant to 35 U.S.C. § 284.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment on all Counts of this Complaint and an award of equitable and monetary relief against Defendants as follows:

a)     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

i.     manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products not authorized by Plaintiffs and that infringe one or more claims in the GENIE-S Patents;

ii.     committing any acts calculated to cause consumers to believe that Defendants' Infringing Products are those sold under the authorization, control, or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

iii.     further infringing the GENIE-S Patents and damaging GENIE-S' goodwill;

iv.     aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon the GENIE-S Patents;

v.     shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory

not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which infringe the GENIE-S Patents;

      vi.    using, linking to, transferring, selling, exercising control over, or otherwise owning any online marketplace accounts, the Defendant Internet Stores, or any other seller identity or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell Infringing Products; and

      vii.    operating and/or hosting online marketplace accounts at the Defendant Internet Stores that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product using the technology of and/or inventions claimed in the GENIE-S Patents that is not a genuine GENIE-S Product or not authorized by Plaintiffs to be sold in connection with the GENIE-S Patents;

    b)    Entry of an Order that Amazon, Shein, Temu, Walmart, and any other online marketplace account provider:

      i.    disable and cease providing services for any accounts through which Defendants engage in the sale of Infringing Products, including any accounts associated with the Defendants listed on Schedule A;

      ii.    disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Infringing Products; and

      iii.    take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index;

    c)    That Plaintiffs be awarded such damages as they shall prove at trial against Defendants that are adequate to compensate Plaintiffs for Defendants' infringement of the GENIE-

S Patents, but in no event less than a reasonable royalty for the use made of the invention by the Defendants, together with interest and costs, pursuant to 35 U.S.C. § 284;

     d)     That the amount of damages awarded to Plaintiffs to compensate Plaintiffs for infringement of the GENIE-S Patents be increased by three times the amount thereof, as provided by 35 U.S.C. § 284;

     e)     That Plaintiffs be awarded their reasonable attorneys' fees and costs; and

     f)     Award any and all other relief that this Court deems just and proper.

Dated: May 30, 2025         Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

By: */s/ Leigh Salomon*
Leigh Salomon (FL Bar No. 1054106)
100 SE 2nd Street, Suite 2800
Miami, FL 33131
Tel: (305) 357-8450
lsalomon@bsfllp.com

*Counsel for Plaintiffs GENIE-S INTERNATIONAL LTD., BEAUTY UNION GLOBAL LTD., AND DONGGUAN YIXIN MAGENTIC DISK CO. LTD.*